IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE SATTAR,<br><br>                  *Plaintiff,*<br><br>   v.<br><br>DET. CAMERON PARKER, *et al.*,<br><br>                  *Defendants.* | CIVIL ACTION<br>NO. 18-05650 |

**PAPPERT, J.**                                                                                    June 10, 2019

<u>**MEMORANDUM**</u>

Dale Sattar sued Lower Merion Township Police Detective Cameron Parker and Officers Shawn Clifford, Corwin Wasson and Brendan O'Connor alleging violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 1986 and the Fourth, Fifth, and Fourteenth Amendments. Defendants moved to dismiss the Complaint for failure to state a claim, in response to which Sattar timely filed a First Amended Complaint. Defendants again move to dismiss all claims against them, a motion the Court grants.

I

Sattar and his next-door neighbor John Reichlin have apparently had a mutually antagonistic relationship for many years. On February 25, 2017, Sattar was outside his home holding a rifle by his side when he asked Chirico Gworkowski—a friend of Reichlin and Lisa Bardarson's daughter—if he had knocked down a wooden barrier in Sattar's driveway. (Am. Compl. ¶¶ 19–20.) After a brief conversation, Gworkowski went inside the neighbor's house and told Bardarson what had happened. (*Id.* at ¶ 21.) She called the police and stated that Sattar threatened her husband and Gworkowski. (*Id.* at ¶ 22.)

1

When the police arrived, Sattar was outside holding his gun, later identified as a Savage Arms .22 caliber semi-automatic rifle with a .22 caliber cartridge in the chamber. (Am. Compl. ¶ 28; Mot. Ex. B ("Affidavit of Probable Cause") at 1, ECF No. 6-1.) The police officers told Sattar to drop the weapon, which he did. (Am. Compl. at ¶ 28.) The officers then handcuffed Sattar, placed him in a patrol car and took him to the police station where he was questioned by Detective Parker. (*Id.* at ¶¶ 29, 34, 38.) Sattar consented to a search of his home and was placed in a holding cell. (*Id.* at ¶¶ 60, 62.) Sometime thereafter, Sattar was charged with simple assault in violation of 18 Pa.C.S.A. § 2701, terroristic threats in violation of 18 Pa.C.S.A. § 2706 and harassment in violation of 18 Pa.C.S.A. § 2709. (*Id.* at ¶ 63.) The charges against Sattar were *nolle prossed* on July 13, 2018. (*Id.* at ¶ 75.)

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an

2

entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

III

As a preliminary matter, Sattar withdrew several of his claims in response to the Defendants' Motion. Specifically, he is no longer pursuing discrimination claims under 42 U.S.C. §§ 1981 and 1982, conspiracy claims under 42 U.S.C. §§ 1985 and 1986, and due process claims under the Fifth Amendment. (Resp. Opp'n at 4, 7, 8.) Those claims are therefore dismissed with prejudice. What remain are claims brought pursuant to § 1983 for false arrest, false imprisonment and malicious prosecution under the Fourth Amendment and an equal protection violation under the Fourteenth Amendment.[1]

To establish a *prima facie* case under § 1983, Sattar must demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). He must also show that the person acting

---

[1] Sattar also brings claims against Defendants in their official capacities, *see* (Am. Compl. ¶¶ 8, 10, 12, 14), which are treated as claims against the Lower Merion Police Department. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"). However, local police departments are not "persons" who can be sued under § 1983. *See Cahill v. Bensalem Twp. Police Dep't*, No. CIV.A. 14-663, 2014 WL 3557199, at *2 (E.D. Pa. July 17, 2014); *see also Brown v. Twp. of Berlin Police Dep't*, No. CIV. 08-3464 RBK AMD, 2010 WL 4193033, at *2 (D.N.J. Oct. 20, 2010). Even if the Court were to construe Lower Merion Police Department to be the Township, the claim would fail as Sattar has not alleged any facts that would support liability under *Monell*.

under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

A

For both false arrest and false imprisonment, a plaintiff must allege facts that plausibly show that the arresting officers lacked probable cause to arrest him. *See, e.g.*, *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). Probable cause exists when, "at the time of the arrest, the facts and circumstances within the officer's knowledge are 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The test is an objective one based on "the facts available to the officers at the moment of arrest." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). Probable cause is present so long as there is a "fair probability that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (internal quotation marks and citation omitted).

The question of whether probable cause exists for an arrest is generally a question of fact for the jury. *See Young v. City of Chester, PA*, No. CV 17-3066, 2018 WL 1583674, at *3 (E.D. Pa. Apr. 2, 2018), *aff'd*, 764 F. App'x 262 (3d Cir. 2019) (citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000)). Where, however, the facts alleged by the Plaintiff, taken as true and drawing all inferences in favor of the Plaintiff, would not support a finding of liability, dismissal is appropriate. *See*

4

*Young*, 2018 WL 1583674, at *3 (citing *Olson v. Ako*, 2018 WL 1391708, at *5 (3d Cir. 2018)); *see also Smithwick v. Detective*, No. 2:18-CV-01057-MJH, 2019 WL 1458993, at *7 (W.D. Pa. Apr. 2, 2019) (citing *Villarosa v. N. Coventry Twp.*, 711 F. App'x 92, 96 (3d Cir. 2017) (affirming a district court's ruling on probable cause as a matter of law on a motion to dismiss)).

Here, the allegations in Sattar's Complaint establish that Defendants had probable cause to arrest him for the offenses charged.[2] Sattar alleges that he has a history of confrontations with his neighbor. (Am. Compl. ¶ 40.) He contends that on February 25, 2017, he had a conversation with Gworkowski and that during the conversation he was "holding his rifle down by his side with his left hand holding the barrel and the stock of the gun resting on the ground[.]" (*Id.* at ¶ 20.) He also alleges that after that conversation, "John Reichlin's wife, Lisa Bardarson, called the police and said that Plaintiff made threats against John Reichlin and [Gworkowski]." (*Id.* at ¶ 22.) He asserts that when the officers arrived, he "picked up his rifle from its resting

---

[2] A person is guilty of simple assault in Pennsylvania if he: "(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another; (2) negligently causes bodily injury to another with a deadly weapon; (3) attempts by physical menace to put another in fear of imminent serious bodily injury; or (4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person." 18 Pa.C.S.A. § 2701.

Under Pennsylvania law, a person commits the crime of terroristic threats if "the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another; (2) cause evacuation of a building, place of assembly or facility of public transportation; or (3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience." 18 Pa.C.S.A. § 2706.

A person commits the crime of harassment in Pennsylvania if, *inter alia*, the person "with intent to harass, annoy or alarm another, the person: strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same." 18 Pa.C.S.A. § 2709.

5

place just outside his front door[.]" (*Id.* at ¶ 28.)  He further alleges that "police officers were pointing their guns at Plaintiff and yelling at him to drop his rifle." (*Id.*)

While Sattar argues that he never threatened his neighbor, the issue is not whether he actually committed the crime but whether "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti*, 71 F.3d at 483.  The allegations in the First Amended Complaint establish that the officers had sufficient facts to believe that Sattar committed the crimes of simple assault, terroristic threats and harassment.

Sattar also appears to argue that no probable cause existed for his arrest because the Affidavit of Probable Cause upon which the arrest was based contained a material misstatement.[3] (Am. Compl. ¶ 64.)  Sattar claims that the allegation that he was "carrying the rifle in a 'low ready' position" is inaccurate.  (*Id.*)  He contends that video surveillance "shows that Plaintiff held his rifle, while standing on his property, in one hand down at his side during the entire time he and Gworkowski spoke with each other.  Plaintiff's hand is on the barrel of the gun and the butt of the gun is down by the ground.  Plaintiff's hand is not anywhere near the trigger and the barrel is pointing straight up."  (*Id.* at ¶ 66.)  Sattar does not contest any other portion of Detective Parker's Affidavit of Probable Cause.

---

[3]   In deciding a motion to dismiss, a court may take into consideration "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Accordingly, the Court may consider Detective Parker's Affidavit of Probable Cause attached to the motion to dismiss, as Sattar does not dispute the authenticity of that document and explicitly relied on it in his Amended Complaint.

6

Even if he was not holding the rifle in the "low ready" position, the allegations in the Amended Complaint are "sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wilson*, 212 F.3d at 789 (quoting *Orsatti*, 71 F.3d at 483). Since the manner in which the Affidavit of Probable Cause states Sattar was holding his rifle is not material to the finding of probable cause, the Court need not reconstruct the Affidavit and analyze it. *See, e.g.*, *See Villarosa*, 711 F. App'x at 96 n.3 (citing *Dempsey*, 834 F.3d at 470). None of the charges against Sattar—simple assault, terroristic threats and harassment— depend on specifically how Sattar was holding his rifle.

B

Sattar also asserts a Fourth Amendment malicious prosecution claim under § 1983. To state a claim for malicious prosecution, a plaintiff must allege that (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (internal citations omitted). Sattar's malicious prosecution claim is similarly dismissed because the facts alleged show that the police had probable cause to charge him.[4]

---

[4] To the extent that Sattar brings state law claims for false arrest, false imprisonment and malicious prosecution, *see* (Am. Compl. ¶ 1), such claims fail because the elements are substantially the same as those for his § 1983 claims. *See Renk v. City of Pittsburgh*, 641 A.2d 289, 295 n.2 (Pa. 1994) (false arrest); *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. 2010) (false imprisonment); *Turano v. Hunt*, 631 A.2d 822, 824 (Pa. Commw. 1993) (malicious prosecution).

C

Sattar next alleges that the defendants violated his equal protection rights. While equal protection claims are "typically . . . concerned with governmental classifications that affect some groups of citizens differently from others," *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008), they may also be brought by individuals as a "class of one." To state an equal protection claim under the "class of one" theory, a plaintiff must show that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006)).

To be similarly situated, the parties must be "alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008). Courts in this Circuit have held that "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Toll Bros., Inc. v. Twp. of Moorestown*, 2011 WL 2259507, at *6 (D.N.J. June 27, 2011) (quoting *Curbside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). At the motion to dismiss stage, Sattar must allege facts sufficient to make plausible the existence of such similarly situated parties and that they are alike in all relevant aspects. *See Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) (citing *Iqbal*, 129 S.Ct. at 1949).

Sattar's theory for an equal protection violation is that "the Defendants maliciously discriminated against him in favor of his neighbor during an ongoing dispute." (Resp. Opp'n Mot. at 8.) Sattar describes in sixteen paragraphs of his

8

Amended Complaint various altercations that he has had with his neighbor Reichlin. (Am. Compl. ¶¶ 43–58.)[5] Sattar alleges that Reichlin: hit him several times; threatened to cut him up with a chain saw; knocked him down; stole his "Keep Your Dog Off My Lawn" sign before destroying it; burglarized his home; ripped out his smoke detector from the ceiling; trespassed on his property and removed a barrier that Sattar had erected in his driveway. *See* (*id*.). Sattar called the police on numerous occasions but the police never arrested Reichlin or issued any citations against him. (*Id*. at ¶¶ 43, 45, 46, 48.)

These allegations are insufficient to state an equal protection claim as Sattar has failed to allege facts sufficient to make plausible that Reichlin is a similarly situated party in *all relevant aspects*. While Sattar alleges that he and Reichlin are similarly situated, Sattar engaged in behavior wholly different than Reichlin or any other individual.[6] Sattar's allegations make clear that Sattar was nothing like Reichlin in at

---

[5] Defendants move to strike the paragraphs in Sattar's Amended Complaint that reference these disputes and dissatisfaction with the police, arguing that they are wholly irrelevant to his current claims. *See* (Mot. at 7). Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he standard for striking under Rule 12(f) is strict and [ ] only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken." *Becker v. Chicago Title Ins. Co*., No. Civ. A. 03-2292, 2004 WL 228672, at *6 (E.D. Pa. Feb. 4, 2004) (citation and internal quotation marks). Motions to strike "are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Giuliani v. Polysciences, Inc*., 275 F.Supp.3d 564, 572 (E.D. Pa. 2017) (citation and internal quotation marks omitted). Given the relevance of these paragraphs to Sattar's equal protection claim, the Motion to Strike is denied.

[6] The Court need not accept Sattar's conclusory assertion that he and Reichlin are similarly situated when it is clear from the face of the Amended Complaint that they are not. *See, e.g*., *Spiker v. Whittaker*, 553 F. App'x 275, 280–81 (3d Cir. 2014) (affirming grant of motion to dismiss because plaintiff "fails to show that the other offenders were similarly situated"); *Pioneer Aggregates, Inc. v. Pa. Dep't of Envtl. Prot*., 540 F. App'x 118, 124 (3d Cir. 2013) (affirming grant of motion to dismiss because, *inter alia*, despite Pioneer's claims that other nearby mines were similarly situated, "Pioneer's Laflin Quarry is at least partly an active mine, while the Coplay Quarry is an inactive mine.").

9

least one dispositive way: when police responded to a call that Sattar was threatening his neighbors, they found Sattar outside his home holding a rifle. Sattar accordingly fails to allege that he and Reichlin are "alike in all relevant aspects" for the purposes of the Fourteenth Amendment. Because the Amended Complaint is devoid of any such allegations of proper comparators, Sattar's equal protection claim fails as a matter of law.[7]

Sattar does not seek leave to amend his Complaint for a second time. In any event, amending the Complaint again would be futile—Sattar's allegations fail to state a claim because on their face they demonstrate that the police had probable cause to arrest him.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[7] Defendants also move to dismiss the Amended Complaint based on a qualified immunity defense. Because the Court finds that Sattar has failed to state a claim, the Court need not address Defendants' claims of qualified immunity. *See Johnson v. City of Philadelphia*, 105 F. Supp. 3d 474, 482 (E.D. Pa. 2015), *aff'd*, 837 F.3d 343 (3d Cir. 2016).